# UNITED STATES DISTRICT COURT
for the
Eastern District of Wisconsin



CLERK'S OFFICE
A TRUE COPY
Feb 23, 2021
s/ Jeremy Heacox
Deputy Clerk, U.S. District Court
Eastern District of Wisconsin

In the Matter of the Search of )
*(Briefly describe the property to be searched* )
*or identify the person by name and address)* )  Case No. **21-M-338 (SCD)**
PROSPECTIVE LOCATION DATA )
ASSOCIATED WITH A CERTAIN )
INSTAGRAM ACCOUNT )
)

## APPLICATION FOR A WARRANT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

See Attachment A

located in the _____ District of _____, there is now concealed *(identify the person or describe the property to be seized)*:

See Attachment B

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

☑ evidence of a crime;

☐ contraband, fruits of crime, or other items illegally possessed;

☐ property designed for use, intended for use, or used in committing a crime;

☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| Title 21, U.S.C., Sections 841 and 846 | distribution of controlled substances; conspiracy to commit same |

The application is based on these facts:
See the attached affidavit.

☑ Continued on the attached sheet.

☐ Delayed notice of _____ days *(give exact ending date if more than 30 days:* _____ *)* is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

*ToddRosenstein* Digitally signed by ToddRosenstein
Date: 2021.02.23 09:05:04 -06'00'

*Applicant's signature*

USMS TFO Todd Rosenstein
*Printed name and title*

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by
_____telephone_____ *(specify reliable electronic means)*.

Date: __2-23-21__

*Judge's signature*

City and state: *Milwaukee, Wis*     Hon. Stephen Dries, U.S. Magistrate Judge
*Printed name and title*

# AFFIDAVIT IN SUPPORT OF
# AN APPLICATION FOR A SEARCH WARRANT

I, Todd Rosenstein, being first duly sworn, hereby depose and state as follows:

## INTRODUCTION AND AGENT BACKGROUND

1.  I make this affidavit in support of an application for a search warrant for information associated with a certain Instagram account that is stored at premises owned, maintained, controlled, or operated by Facebook, Inc. ("Facebook"), an electronic communications service and/or remote computing service provider headquartered at 1601 Willow Road in Menlo Park, California. The information to be searched is described in the following paragraphs and in Attachment A. This affidavit is made in support of an application for a search warrant under 18 U.S.C. §§ 2703(a), 2703(b)(1)(A) and 2703(c)(1)(A) to require Facebook to disclose to the government copies of the information (including the content of communications) further described in Section I of Attachment B. Upon receipt of the information described in Section I of Attachment B, government-authorized persons will review that information to locate the items described in Section II of Attachment B.

2.  I am a Task Force Officer (TFO) with the United States Marshals Service, and I have been employed full time as a Detective with the Milwaukee County Sheriff's Office since 04/14/00. One of my primary duties is to investigate and arrest state and federal Fugitives. I have obtained my Wisconsin Law Enforcement Certification through the Milwaukee County Sheriff's Office Training Academy in Milwaukee, WI. Your affiant is assigned to the U.S. Marshals Fugitive Task Force and has been since February 2020, being involved in numerous fugitive investigations during this period. Many of these investigations were aided by procurement of records related to electronic communications and subsequent analysis of those records. In most of those cases, the records provided critical investigative leads and

corroborative evidence. I have had previous experiences using electronic location data in order to locate and apprehend fugitives from justice. I am an investigator or law enforcement officer of the United States within the meaning of 18 U.S.C. Section 2510(7), in that I am empowered by law to conduct investigations.

3. This affidavit is intended to show merely that there is sufficient probable cause for the requested warrant and does not set forth all of my knowledge about this matter.

4. Based on the facts set forth in this affidavit, there is probable cause to believe that Michael L. SMITH has violated 21 U.S.C. Sections 841 and 846 (distribution of controlled substances and conspiracy to do the same). SMITH was charged with these crimes on 02/18/2020 and is the subject of an arrest warrant issued on 02/20/2020. There is also probable cause to believe that SMITH is aware of these charges and has fled. There is also probable cause to believe that the information described in Attachment B will assist law enforcement in arresting SMITH, who is a "person to be arrested" within the meaning of Federal Rule of Criminal Procedure 41(c)(4).

## JURISDICTION

5. The court has jurisdiction to issue the proposed warrant because it is a "court of competent jurisdiction" as defined 18 U.S.C. Section 2711. Specifically, the Court is a district court of the United States that has jurisdiction over the offense being investigated, *see* 18 U.S.C. Section 2711(3)(A)(i).

## PROBABLE CAUSE

6. In February of 2019, case agents initiated an investigation into a group of known and unknown drug traffickers operating in the Milwaukee area, known as the Buffum Meinecke

2

Boys ("BMB"), a group which included SMITH and various of his codefendants. As part of the investigation, case agents have interviewed several confidential sources, conducted physical and electronic surveillance, utilized pen registers, reviewed historical phone toll records, subpoenaed and reviewed records, and conducted controlled purchases of cocaine, crack cocaine, and heroin. As a result of the intelligence provided by the confidential sources and the controlled purchases, along with information obtained from other law enforcement techniques, case agents have identified various members of the BMB and identified several sources of supply.

7. As part of that investigation, law enforcement executed a "controlled buy" of over twenty-seven grams of cocaine from SMITH on November 27th, 2019. I know a "controlled buy" is a law enforcement operation in which an informant purchases drugs from a target. The operation is conducted using surveillance, usually audio and video taping equipment, and pre-recorded purchase money. When an informant is used, s/he is searched for contraband, weapons, and money before the operation. The informant is also wired with a concealed body recorder and/or a monitoring device. When the transaction is completed, the informant meets case agents at a pre- determined meet location and gives the purchased drugs and the recording/monitoring equipment to the case agents. The informant is again searched for contraband, weapons, and money and then interviewed by the case agents about the drug transaction. A sample of the suspected drug is then field tested by the case agents for the presence of controlled substances and placed in inventory pursuant to normal inventory procedures. All of the calls to the target by the informants are consensually recorded calls under the direction and control of case agents and made in the presence of case agents. Additionally,

3

case agents observe the informants dial the target's number on each occasion and the contact is verified through telephone records. The controlled buy on November 27th, 2019 from SMITH comported with this practice, insofar as SMITH directed an associate to deliver cocaine to an informant working with law enforcement on that date. As part of this same investigation, multiple confidential informants also told law enforcement that SMITH was trafficking in large amounts of cocaine.

8. SMITH was indicted on February 18, 2020, in Case No. 20 CR 41, along with many other BMB members, for various controlled substance offenses, including the "controlled buy" described above. An arrest warrant was issued for SMITH in relation to those charges, but he remains a fugitive from justice. The United States Marshals Service is leading the investigation in order to locate and arrest SMITH.

9. On February 9th, 2021, USMS received information about SMITH from FBI Special Agent Steven Whitecotton. SA Whitecotton stated that a confidential human source (CS #1) provided an Instagram Account for SMITH as "Lilscott3278."

10. A summarized statement about CS #1's credibility was provided to the affiant by SA Whitecotton and is as written as follows: "For several reasons, case agents believe that CS #1 is reliable and credible. First, CS #1 has been providing continuous information since April of 2019. Second, the information provided by the CS #1 is consistent with evidence obtained elsewhere in this investigation where CS #1 was not utilized, and substantial portions of CS #1's information have been corroborated through independent investigation, including surveillance and information from other sources. CS #1 is cooperating for monetary compensation and has prior drug trafficking and burglary convictions. For these reasons, case

agents believe CS #1 to be reliable."

11. The affiant checked this account and it is "Private" and unable to be viewed by public persons. The account has 269 "posts"; 1214 "followers"; and 1271 "following." The name "Marcus Jones" is listed under the profile photo. The profile image is of a black male juvenile with the visible words "gg Gang 4" imposed on the bottom of the photo.

12. The affiant knows that subjects who are wanted for crimes and are trying to remain "at large" use social media frequently to communicate with family/friends/ and co-actors. It is common for wanted subjects to set these social media accounts to "Private" or lock the access to them, use alias names and use accounts of other persons to remain undetected by law enforcement authorities.

13. Through investigation of SMITH, the affiant is aware of SMITH's tattoos and physical descriptors. Criminal history entries for SMITH show he has a tattoo on his forearm depicting a "Tombstone" with the words "RIP Scott." The affiant is also aware that SMITH does have children.

14. A notation in SMITH's Wisconsin Department of Transportation record shows his license is in a "cancelled" status due to fraud. The notation reads: "(19car1573) Fraud determined through facial recognition*Maintain notation on record for historical purposes**; 19car1573 Fraud Determined thru facial recognition*Multiple records exist*Customer has also obtained a record using Willie Parker (see Did#P6268808514907)*verify proof of Name, Dob and Identity for all Law Enforcement and DMV contacts**" An entry on 01/17/2020 shows SMITH was found guilty in Milwaukee County of "Falsified Application" through Uniform Traffic Citation (UTC) #BD355006-1 Milwaukee County Court Case

5

2020TR000977. A check of that WI Driver ID shows it belongs to Willie Parker (M/B DOB 04/29/85). No photo is associated with that WI driver record; however, it shares many of the same notations as the driver's license previously issued to SMITH.

## BACKGROUND CONCERNING INSTAGRAM[1]

15. Instagram is a service owned by Facebook, a United States company and a provider of an electronic communications service as defined by 18 U.S.C. §§ 3127(1) and 2510. Specifically, Instagram is a free-access social networking service, accessible through its website and its mobile application, that allows subscribers to acquire and use Instagram accounts, like the target account(s) listed in Attachment A, through which users can share messages, multimedia, and other information with other Instagram users and the general public.

16. Facebook collects basic contact and personal identifying information from users during the Instagram registration process. This information, which can later be changed by the user, may include the user's full name, birth date, gender, contact e-mail addresses, physical address (including city, state, and zip code), telephone numbers, credit card or bank account number, and other personal identifiers. Facebook keeps records of changes made to this information.

17. Facebook also collects and retains information about how each user accesses and uses Instagram. This includes information about the Internet Protocol ("IP") addresses used to

---

[1] The information in this section is based on information published by Facebook on its website and its Instagram website, including, but not limited to, the following webpages: "Data Policy," https://help.instagram.com/519522125107875; "Information for Law Enforcement," https://help.instagram.com/494561080557017; and "Help Center," https://help.instagram.com.

6

create and use an account, unique identifiers and other information about devices and web browsers used to access an account, and session times and durations.

18. Each Instagram account is identified by a unique username chosen by the user. Users can change their usernames whenever they choose but no two users can have the same usernames at the same time. Instagram users can create multiple accounts and, if "added" to the primary account, can switch between the associated accounts on a device without having to repeatedly log-in and log-out.

19. Instagram users can also connect their Instagram and Facebook accounts to utilize certain cross-platform features, and multiple Instagram accounts can be connected to a single Facebook account. Instagram accounts can also be connected to certain third-party websites and mobile apps for similar functionality. For example, an Instagram user can "tweet" an image uploaded to Instagram to a connected Twitter account or post it to a connected Facebook account, or transfer an image from Instagram to a connected image printing service. Facebook maintains records of changed Instagram usernames, associated Instagram accounts, and previous and current connections with accounts on Facebook and third-party websites and mobile apps.

20. Instagram users can "follow" other users to receive updates about their posts and to gain access that might otherwise be restricted by privacy settings (for example, users can choose whether their posts are visible to anyone or only to their followers). Users can also "block" other users from viewing their posts and searching for their account, "mute" users to avoid seeing their posts, and "restrict" users to hide certain activity and prescreen their comments. Instagram also allows users to create a "close friends list" for targeting certain communications and activities to a subset of followers.

21. Users have several ways to search for friends and associates to follow on Instagram, such as by allowing Facebook to access the contact lists on their devices to identify which contacts are Instagram users. Facebook retains this contact data unless deleted by the user and periodically syncs with the user's devices to capture changes and additions. Users can similarly allow Facebook to search an associated Facebook account for friends who are also Instagram users. Users can also manually search for friends or associates.

22. Each Instagram user has a profile page where certain content they create and share ("posts") can be viewed either by the general public or only the user's followers, depending on privacy settings. Users can customize their profile by adding their name, a photo, a short biography ("Bio"), and a website address.

23. One of Instagram's primary features is the ability to create, edit, share, and interact with photos and short videos. Users can upload photos or videos taken with or stored on their devices, to which they can apply filters and other visual effects, add a caption, enter the usernames of other users ("tag"), or add a location. These appear as posts on the user's profile. Users can remove posts from their profiles by deleting or archiving them. Archived posts can be reposted because, unlike deleted posts, they remain on Facebook's servers.

24. Users can interact with posts by liking them, adding or replying to comments, or sharing them within or outside of Instagram. Users receive notification when they are tagged in a post by its creator or mentioned in a comment (users can "mention" others by adding their username to a comment followed by "@"). An Instagram post created by one user may appear on the profiles or feeds of other users depending on a number of factors, including privacy settings and which users were tagged or mentioned.

25. An Instagram "story" is similar to a post but can be viewed by other users for only 24 hours. Stories are automatically saved to the creator's "Stories Archive" and remain on Facebook's servers unless manually deleted. The usernames of those who viewed a story are visible to the story's creator until 48 hours after the story was posted.

26. Instagram allows users to broadcast live video from their profiles. Viewers can like and add comments to the video while it is live, but the video and any user interactions are removed from Instagram upon completion unless the creator chooses to send the video to IGTV, Instagram's long-form video app.

27. Instagram Direct, Instagram's messaging service, allows users to send private messages to select individuals or groups. These messages may include text, photos, videos, posts, videos, profiles, and other information. Participants to a group conversation can name the group and send invitations to others to join. Instagram users can send individual or group messages with "disappearing" photos or videos that can only be viewed by recipients once or twice, depending on settings. Senders can't view their disappearing messages after they are sent but do have access to each message's status, which indicates whether it was delivered, opened, or replayed, and if the recipient took a screenshot. Instagram Direct also enables users to video chat with each other directly or in groups.

28. Instagram offers services such as Instagram Checkout and Facebook Pay for users to make purchases, donate money, and conduct other financial transactions within the Instagram platform as well as on Facebook and other associated websites and apps. Instagram collects and retains payment information, billing records, and transactional and other information when these services are utilized.

29. Instagram has a search function which allows users to search for accounts by username, user activity by location, and user activity by hashtag. Hashtags, which are topical words or phrases preceded by a hash sign (#), can be added to posts to make them more easily searchable and can be "followed" to generate related updates from Instagram. Facebook retains records of a user's search history and followed hashtags.

30. Facebook collects and retains location information relating to the use of an Instagram account, including user-entered location tags and location information used by Facebook to personalize and target advertisements.

31. Facebook uses information it gathers from its platforms and other sources about the demographics, interests, actions, and connections of its users to select and personalize ads, offers, and other sponsored content. Facebook maintains related records for Instagram users, including information about their perceived ad topic preferences, interactions with ads, and advertising identifiers. This data can provide insights into a user's identity and activities, and it can also reveal potential sources of additional evidence.

32. In some cases, Instagram users may communicate directly with Facebook about issues relating to their accounts, such as technical problems, billing inquiries, or complaints from other users. Social networking providers like Facebook typically retain records about such communications, including records of contacts between the user and the provider's support services, as well as records of any actions taken by the provider or user as a result of the communications.

33. For each Instagram user, Facebook collects and retains the content and other records described above, sometimes even after it is changed by the user (including usernames,

phone numbers, email addresses, full names, privacy settings, email addresses, and profile bios and links).

34. In my training and experience, evidence of who was using Instagram and from where, and evidence related to criminal activity of the kind described above, may be found in the files and records described above. Furthermore, this evidence may establish the current whereabouts of the subject of the investigation, who remains at large and in fugitive status.

35. In addition, the user's account activity, logs, stored electronic communications, and other data retained by Facebook can indicate who has used or controlled the account. This "user attribution" evidence is analogous to the search for "indicia of occupancy" while executing a search warrant at a residence. For example, subscriber information, [[email and messaging logs, documents, and photos and videos (and the data associated with the foregoing, such as geo-location, date and time)]] may be evidence of who used or controlled the account at a relevant time. As an example, because every device has unique hardware and software identifiers, and because every device that connects to the Internet must use an IP address, IP address and device identifier information can help to identify which computers or other devices were used to access the account. Such information also allows investigators to understand the geographic and chronological context of access, use, and events relating to the crime under investigation.

36. Therefore, Facebook's servers are likely to contain stored electronic communications and information concerning subscribers and their use of Instagram. In my training and experience, such information may assist in finding the current whereabouts of Michael L. SMITH who has violated 21 U.S.C. Sections 841 and 846 (distribution of controlled substances and conspiracy to do the same). SMITH was charged with these crimes on

11

02/18/2020 and is the subject of an arrest warrant issued on 02/20/2020. There is also probable cause to believe that SMITH is aware of these charges and has fled and is a "person to be arrested" within the meaning of Federal Rule of Criminal Procedure 41(c)(4).

## **CONCLUSION**

37. Based on the forgoing, I request that the Court issue the proposed search warrant.

38. Pursuant to 18 U.S.C. § 2703(g), the presence of a law enforcement officer is not required for the service or execution of this warrant. The government will execute this warrant by serving the warrant on Facebook. Because the warrant will be served on Facebook, who will then compile the requested records at a time convenient to it, reasonable cause exists to permit the execution of the requested warrant at any time in the day or night.

12

# ATTACHMENT A

## Property to Be Searched

This warrant applies to information specified in Attachment B associated with Instagram account "Lilscott3278" that is stored at premises owned, maintained, controlled, or operated by Facebook, Inc., a company headquartered at 1601 Willow Road, Menlo Park, California.

# ATTACHMENT B

## Particular Things to be Seized

I. **Information to be disclosed by Instagram, whose parent company is Facebook, Inc. (the "Provider")**

To the extent that the information described in Attachment A is within the possession, custody, or control of Facebook Inc., Facebook Inc. is required to disclose the following information to the government, for the User ID listed in Attachment A, all physical location data collected by Facebook Inc. for the user of the account, including any data collected by Facebook Inc.'s location services via the user's mobile phone or other device, on a real-time or near-real time basis. Facebook Inc. is required to provide any such data they collect, regardless of the time of day.

II. **Information to be seized by the government**

All data disclosed by the Provider pursuant to this warrant. This data shall be made accessible by the Provider to the United States Marshals Service on a continuous basis, day or night, and/or emailed to United States Marshal Service Task Force Officer todd.rosenstein at todd.rosenstein@milwaukeecountywi.gov

III. **Time for production by provider**

The Provider shall begin producing the information required by this warrant within seven (7) days of the date of service of the warrant.

IV. **Duration of production**

The Provider shall produce the information required by this attachment for a period of thirty (30) days from the date of issuance of this warrant unless notified sooner to cease.